**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Francisco Martin, | No. CV-08-1955-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael Astrue, Commissioner, Social Security Administration, | |
| Defendant. | |

On December 3, 2002, Plaintiff suffered injuries to his chest and left arm when he was crushed by a backhoe in a work-related accident. Plaintiff was rushed to the hospital and had surgery the same day. A portion of his left lung and fifth rib were removed. He was discharged from the hospital two weeks later, diagnosed with multiple left rib fractures, flail chest, right upper bronchial injury, bilateral pulmonary contusions, and acute psychosis. Dkt. #8, Tr. 204-06.

Plaintiff filed an application for disability insurance benefits on November 20, 2003, claiming to be disabled since the date of the accident. Tr. 99-101. The application was denied. Tr. 55-63. A hearing before an Administrative Law Judge ("ALJ") was held on May 17, 2006. Tr. 505-27. The ALJ issued a written decision on November 17, 2006, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 42-49. The Appeals Council remanded the case for further proceedings (Tr. 83-85), and a new hearing was held on February 18, 2008 (Tr. 528-43). The ALJ issued a new decision on March 28, 2008, again finding Plaintiff not disabled. Tr. 19-29. This decision became Defendant's

final decision when the Appeals Council denied review. Tr. 8-11. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt. #1. For reasons that follow, the Court will affirm Defendant's decision.

**I.     Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006). Substantial evidence is "more than a mere scintilla, but less than a preponderance[.]" *Andrews v. Shalala*, 53 F.3d 1053, 1039 (9th Cir. 1995). It is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the entire record as a whole. *See Robbins*, 466 F.3d at 882.

**II.    Analysis.**

Whether a claimant is disabled is determined using a five-step sequential evaluation process. The claimant bears the burden in steps one through four. To establish disability, the claimant must show (1) he is not currently working, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. At step five, the Commissioner bears the burden of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date. Tr. 20, 28 ¶ 2. The ALJ further found that Plaintiff had a severe status post left-side crush injury with removal of the left upper lung, but this impairment was not severe enough to meet or equal a listed impairment. Tr. 21, 28 ¶¶ 3-4. The ALJ concluded that while Plaintiff was not able to perform his past work as a pipe installer, busboy, and cook, he was not disabled because he had the RFC to perform a significant number of unskilled, sedentary jobs with restrictions. Tr. 28, 29 ¶¶ 6-11.

Plaintiff contends that the ALJ erred at step five by misinterpreting the findings

and opinions of a treating physician (Dr. Seltzer) and three examining physicians (Drs. Schwartzberg, Johnston, and Rafique), and by improperly rejecting their opinions in favor of an opinion by another physician (Dr. Cunningham). Dkt. ##13, 15. Plaintiff further contends that the ALJ misinterpreted the conclusion of two vocational evaluators (A.M. Gamboa and John Tierney). Dkt. # 13. Defendant argues that the ALJ did not err and her decision is supported by substantial evidence. Dkt. #14.

### A. Dr. Gerald Schwartzberg.

Pulmonary function studies performed by Dr. Schwartzberg on April 4, 2003 showed that Plaintiff had a vital capacity of only 36%. Based on that result, Dr. Schwartzberg found that Plaintiff's physical impairment was approximately 75%. Dr. Schwartzberg reexamined Plaintiff one year later, concluding that he had sustained a permanent pulmonary impairment of 50% of his lung function. Tr. 358. Dr. Schwartzberg opined that "[b]ecause of [Plaintiff's] lack of education, there is nothing he can do but physical work and with [his] injuries there is no way he can do that." Tr. 361.

The ALJ gave little probative weight to Dr. Schwartzberg's opinion because he provided no limitations on Plaintiff's ability to perform basic work activities and his opinion was therefore a vocational assessment outside his area expertise. Tr. 24. This is a legitimate reason for rejecting the opinion. The social security regulations and rules make clear that how the vocational factors of age, education, and work experience apply and whether a claimant is "disabled" under the statute are administrative findings, and "the final responsibility for deciding issues such as these is reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 2006); 20 C.F.R. § 404.1527(e)(2); *see Arriola v. Astrue*, No. ED CV 08-00249-VBK, 2008 WL 4926961, at *2 (C.D. Cal. Nov. 14, 2008) (rejecting doctor's opinion that the plaintiff was incapable of any work and noting that SSR 96-5p and § 404.1527 "unambiguously instruct that the determination of a claimant's [RFC], or the application of vocational factors is the final responsibility of the Commissioner"); *Cunanan v. Astrue*, No. CV 07-4638-OP, 2008 WL 4184639, at *1 (C.D. Cal. Sept. 3, 2008) ("[T]he ALJ is not bound to follow the opinion of a medical practitioner when deciding vocational

capabilities.") (citing § 404.1527(e)(2)); *see also Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (ALJ did not err in rejecting doctor's opinion that the plaintiff could not return to the heavy labor he previously performed and would be unable to do most regular jobs where there was nothing in the record "as to what jobs [the doctor] would consider as 'regular' jobs, or what level of exertional activity would be involved in such jobs").

**B.     Dr. Dana Seltzer.**

Dr. Seltzer treated Plaintiff several times between June and November 2004. Dr. Seltzer's findings were not entirely consistent. On June 18, 2004, Dr. Seltzer stated that Plaintiff "certainly was not ready to return to work at this point in time." Tr. 432. On July 20, 2004, the doctor found both that Plaintiff was "not at a maximum medical improvement or at a point where he is ready to return to work" and that Plaintiff was not "able to return to work at anything more than a light workload with no significant lifting using the left upper extremity." Tr. 429. On November 24, 2004, the doctor stated: "I think with scar revision and reconstructive surgery for his chest wall scar, I think [Plaintiff] can return to the work force though possibly not doing what he was doing before." Tr. 425.

In her initial decision, the ALJ found Dr. Seltzer's opinion to be consistent with a finding that Plaintiff could perform light work activity and gave the opinion great weight based on Dr. Seltzer's treating relationship with Plaintiff. Tr. 46. The Appeals Council noted that there is an implication in Dr. Seltzer's opinion that, without surgery (which Plaintiff did not have), Plaintiff could not work. The Appeals Council also noted that the ALJ did not address all of Dr. Seltzer's opinions. The case was remanded for further consideration of the doctor's opinions. Tr. 84.

Plaintiff contends that the ALJ erred on remand by failing "to cite to Dr. Seltzer's follow-up opinion in November of 2004 that [Plaintiff] would need scar revision and reconstructive surgery in order to be able to return to work." Dkt. #13 at 5. To the contrary, the ALJ explicitly considered that opinion: "In a statement dated November 24, 2004, Dr. Seltzer noted that with scar revision and reconstructive surgery for his chest wall scar,

the claimant could return to the work force, although probably not at the level of his previous work." Tr. 24 (citing Ex. 15F/2 (Tr. 425)).

Plaintiff further contends that the ALJ implicitly rejected Dr. Seltzer's opinions that Plaintiff was incapable of returning to work, and therefore failed to give specific and legitimate reasons for rejecting those opinions. Dkt. #13 at 5-6. Consistent with the order of remand, the ALJ explicitly considered the inconsistencies in Dr. Seltzer's opinions. Tr. 24. The ALJ specifically found that the doctor's opinion that Plaintiff could perform "a light workload with no significant lifting using the left upper extremity" (Tr. 429) is "reasonable based on the objective findings on examination." Tr. 24. The ALJ noted that the doctor's findings show Plaintiff "is distally, neurologically and vascularly intact, has a decent, improved range of motion, negative impingement signs, and a positive response to medication." *Id.* The ALJ further noted that "the overall evidence of record discussed herein establishes that although the claimant has not undergone any reconstructive surgery, this fact, in and of itself, would not prevent him from engaging in all work related activities." *Id.*

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Id.* at 1039-40. The ALJ interpreted Dr. Seltzer's opinion to mean that even without reconstructive surgery, Plaintiff could perform light work with restrictions. Tr. 24. This interpretation is reasonable given the ambiguous and equivocal nature of Dr. Seltzer's opinions (*see* Tr. 425, 429), and is supported by substantial evidence (*see* Tr. 424-32). The ALJ did not err in considering Dr. Seltzer's opinions.

**C.     Dr. Gregory Johnston.**

Plaintiff was examined by Dr. Johnston on May 4, 2005. Relying in part on the results of the pulmonary tests conducted by Dr. Schwartzberg, Dr. Johnston opined that Plaintiff "is 100% restricted in returning to heavy, physical labor" and is not "able to return to any type of work which involves lifting, picking, or shoveling." Tr. 441. He further opined that

if Plaintiff "spoke English, had the mental capability, education and was retrained in some other field then some type of gainful employment could be accomplished[.]" Tr. 441-42. He ultimately concluded that Plaintiff is totally and permanently disabled. Tr. 442.

The ALJ initially rejected Dr. Johnston's conclusion because it was based on a vocational assessment and addressed an issue ultimately reserved to the ALJ. Tr. 47. The Appeals Council noted that Dr. Johnston specifically found that Plaintiff was restricted to lifting 10 pounds with his left arm and was unable to perform any work involving picking, lifting or shoveling." Tr. 84. The Appeals Council instructed the ALJ to further consider Dr. Johnston's opinions even though they were internally inconsistent with respect to Plaintiff's ability to lift. *Id.*

Plaintiff contends that the ALJ erred in disregarding Dr. Johnston's opinions on remand by "primarily stating that the doctor cannot give [a] vocational opinion." Dkt. #13 at 6. The ALJ did conclude that Dr. Johnston's opinion of total and permanent disability was based largely on vocational factors and not on the minimal objective findings found on examination (Tr. 25), but Plaintiff does not explain why this constitutes legal error. Moreover, the ALJ provided additional specific and legitimate reasons for rejecting Dr. Johnston's opinions. The ALJ noted that "Dr. Johnston's opinion that the claimant can lift 10 pounds with his left upper extremity is inconsistent with his other statement that the claimant is unable to lift." Tr. 25. The ALJ further noted that "the inability to pick and/or shovel would not eliminate all work in the national economy." *Id.* The ALJ also discussed the finding by Dr. Johnston in December 2007 that Plaintiff should be released to light work with restrictions, including lifting 20 pounds maximum, limited use of the left hand and arm, and work on flat or settled ground. *Id.* (citing Ex. 21F (Tr. 499-500)). Consistent with her duty to interpret and resolve inconsistencies in the medical evidence, *see Andrews*, 53 F.3d at 1039, the ALJ ultimately found "the latter opinion of Dr. Johnston more in line with the claimant's functional capacity overall during the period of adjudication." *Id.* The ALJ did not err in considering Dr. Johnston's opinions.

### D. Dr. Salam Rafique.

Plaintiff was examined by Dr. Rafique on November 11, 2007. Plaintiff reported that he was limited in terms of activity due to dyspnea and chronic left upper extremity pain and weakness. Tr. 481-82. Dr. Rafique diagnosed Plaintiff with restrictive lung defect, chronic chest pain, persistent cough with underlying bronchitis suspected, bilateral lung scarring, and left shoulder weakness and chronic left hand paralysis. Tr. 483. He found that Plaintiff could lift and carry 10 pounds occasionally, sit 8 hours, stand 4 hours, and walk 2 hours in an 8-hour work day. Tr. 486-87. He further found that while Plaintiff had no restrictions with respect to his feet and right hand, he was unable to use his left hand due to paralysis. Tr. 488.

Plaintiff contends that the ALJ erred in considering Dr. Rafique's findings because the doctor indicated that Plaintiff could not lift adequately to return to work. Dkt. #13 at 7. As Defendant correctly notes in his response (Dkt. #14 at 13), Dr. Rafique made no such finding. The ALJ discussed the doctor's findings in detail, concluding that while Plaintiff's dyspnea appeared to be caused by a lack of conditioning, the findings relating to Plaintiff's pulmonary impairment were consistent with the objective medical evidence. Tr. 26. The ALJ rejected the diagnosis of left hand paralysis, and the resulting limitations, on the ground that "[o]ther physicians with more closely related specialties to the claimant's left upper extremity impairment have found that while the claimant's left hand is limited, it is not paralyzed." *Id.* Plaintiff does not explain why this interpretation of the medical evidence is unreasonable or otherwise improper. Dr. Rafique himself indicated that Plaintiff's left hand was "possibly" paralyzed. Tr. 482. The Court concludes that the ALJ adequately considered Dr. Rafique's assessment of Plaintiff and provided a specific and legitimate reason for rejecting the finding of left-hand paralysis.

### E. Dr. Keith Cunningham.

Plaintiff was examined by Dr. Cunningham on November 2, 2007. Dr. Cunningham diagnosed Plaintiff with chronic left thoracic and shoulder pain, mild atrophy about the left arm with preserved range of motion and no signs of active radiculopathy, and status post left

upper lobectomy with clear breath sounds. Tr. 474. Dr. Cunningham found that Plaintiff was able to (1) lift and carry 10 pounds continuously and up to 100 pounds occasionally, (2) sit 8 hours and stand and walk 6 hours in an 8-hour work day, (3) continuously use his hands except with respect to overhead reaching, and (4) crawl occasionally, stoop and climb ladders frequently, and kneel, crouch, balance, and climb stairs and ramps continuously. Tr. 493-95. He further found that Plaintiff needed to avoid exposure to dust, odors, fumes and other pulmonary irritants and could tolerate only occasional exposure to unprotected heights and extreme cold and heat. Tr. 497.

The ALJ explicitly discussed Dr. Cunningham's findings. Tr. 26. The ALJ accepted those findings with the exception of the lifting and carrying limits, concluding that Plaintiff's left upper extremity impairments would result in greater restrictions in those functional areas. *Id.*

Plaintiff asserts that "the ALJ cannot pick and choose the lifting capacity of the claimant" (Dkt. #13 at 7), but presents no argument or legal authority in support of this assertion. Nor does Plaintiff cite any legal authority in support of his assertion that the ALJ was required to reject Dr. Cunningham's findings in favor of the opinions of Drs. Seltzer and Johnston because Dr. Cunningham specializes in internal medicine. *See id.* Because Dr. Cunningham's findings were based on his own independent examination of Plaintiff (*see* Tr. 473-47), the ALJ was entitled to accept those findings over the opinions of other physicians. *See Magallanes*, 881 F.2d at 751; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

**F.    A.M. Gamboa and John Tierney.**

A vocational economic assessment was prepared by A.M. Gamboa and John Tierney on April 29, 2005. Tr. 193-96. They concluded that "due to a combination of impairments and exertional limitations, [Plaintiff] is unable to perform any type of substantial, gainful employment" and therefore meets the U.S. Census Bureau's definition of work disability. Tr. 196.

Plaintiff notes that the ALJ rejected that conclusion because the vocational evaluators

never examined Plaintiff and are not qualified to render medical opinions (Dkt. #13 at 6), but does not explain why this constitutes legal error on the part of the ALJ. Moreover, as the ALJ noted in her decision, "the conclusion reached by the evaluators is based on a definition of disability significantly different than that found in the Social Security Act and Regulations." Tr. 25. The ALJ did not err in rejecting the vocational evaluators' finding of total disability.

**III. Conclusion.**

The ALJ set forth a detailed and thorough summary of the facts and conflicting medical evidence, stated her interpretation, and made specific findings. Tr. 19-29. The ALJ determined, based on a consideration of the entire record, that Plaintiff had the RFC to perform the unskilled, sedentary jobs of inspector, tester, sorter, and production worker. Tr. 27-28. The ALJ heard testimony from a vocational expert (Tr. 535-36) and determined that those jobs exist in substantial numbers in the national economy. Tr. 28. Plaintiff has not shown that the ALJ committed legal error, and the findings of Dr. Cunningham constitute substantial evidence to support the ALJ's decision to reject the opinions of other physicians. *See Magallanes*, 881 F.2d at 751-52; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Because the Court may not "substitute its own determination of what the evidence shows for the ALJ's if there is sufficient evidence to support the ALJ's outcome," *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990), the administrative decision denying benefits must be affirmed.

**IT IS ORDERED:**

1. Defendant's administrative decision denying benefits is **affirmed**.
2. The Clerk is directed to **terminate** this action.

DATED this 9th day of June, 2009.

_____
David G. Campbell
United States District Judge